ORIGINAL

# In the United States Court of Federal Claims

No. 14-506C
(Filed: November 26, 2014)

FILED
NOV 26 2014
U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| SAID GSSIME, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) <br> ) | NOT FOR PUBLICATION |

Said Gssime, New York, NY, pro se.

Jeffrey A. Regner, Senior Trial Counsel, with whom were Stuart F. Delery, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

    Pending before the court is defendant's motion to dismiss the pro se complaint in the above-captioned case for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). Def.'s Mot. to Dismiss (Def.'s Mot.), Dkt. No. 7. Plaintiff filed his complaint in this court on June 12, 2014, alleging numerous tortious, criminal, and constitutional claims against the United States and various state and local officials and employees in connection with his criminal prosecution for arson. Compl., Dkt. No. 1; Pl.'s Mem. of Law, Dkt. No. 2.[1] Plaintiff claims he is entitled to monetary damages under several amendments to the United States Constitution, the Civil Rights Act of 1964, and the Geneva Conventions. Compl. ¶ 11–12.

---

[1]     Plaintiff's filings in this case are not paginated. When citing to plaintiff's filings, the court cites either the numbering system assigned to each paragraph by plaintiff, when available, or the pagination assigned by the court's electronic filing system.

As explained further below, the court finds that it does not have jurisdiction over plaintiff's claims. The court also finds that the interests of justice do not counsel in favor of transferring this case. Accordingly, defendant's motion to dismiss is **GRANTED**, and plaintiff's complaint is **DISMISSED** in its entirety.

I. Background

The United States is captioned as the named defendant in plaintiff's complaint. But plaintiff's claims are leveled in fact against the state judge and state prosecutors involved in his criminal prosecution.[2] Plaintiff alleges that these state officials conspired to unlawfully convict, torture and imprison him in connection with an act of arson. Asserting that he was a "victim of [c]onspiracy, . . . atrocity and [a] judicial hate crime," Compl. ¶ 7, plaintiff complains that the state judge and state prosecutors "decided to burry [sic] [him] alive without proving his guilt or insanity and without legal representation," id. ¶ 8. Plaintiff further contends that this court can hear these claims "because th[e]se officials who performed [the] [j]udicial [d]ut[ies] were hired by the United States Department of Justice." Id. ¶ 1.

Plaintiff's grievances extend to the Legal Aid Society counsel appointed to assist him in the state court criminal proceeding. He alleges that the two appointed attorneys did not consult with him prior to, or represent him during, the preliminary hearing and other legal proceedings. Id. ¶ 5. Plaintiff contends that on May 6, 1998, he "was brought to court and . . . [c]onvicted without [a] legal defense." Id. ¶ 10. Plaintiff also asserts he was wrongfully imprisoned for seventeen years for a crime he did not commit. Id. ¶ 11.

Plaintiff's complaint also includes allegations of tortious acts by local police officers at the Nassau County Correctional Center and by court-appointed doctors. Plaintiff claims he was "tortured to speak" following his arrest, in connection with a deliberately set garage fire. Id. ¶¶ 2–3. Plaintiff adds that he was sent to the Nassau County Correctional Center and "beaten badly[,] . . . suffering a dozen of fractures to his skeleton, . . . and [the loss of] all of his upper teeth." Id. ¶ 4. Plaintiff asserts that he suffered additional injuries when, at the request of the state judge and state prosecutors, he was "forced, . . . and manipulated to undergo" competency examinations by two appointed doctors in August and September of 1997. Id. ¶ 9.

---

[2] See, e.g., Compl. at 1 (introduction), June 12, 2014, Dkt. No. 1 ("Plaintiff made this Complaint [i]n the United States Court of Claims against the United States [j]udges and [p]rosecutors who were acting under [c]olor of [s]tate law when they intentionally committed [c]riminal acts, . . . and deliberately ruled against the United States Constitution . . . .").

Plaintiff claims that various constitutional violations have occurred. See id. ¶ 11 (specifically asserting violations of the First, Second, Fourth, Fifth, Sixth, Eighth and the Fourteenth Amendments). Plaintiff adds that he was denied counsel and received ineffective assistance from his appointed counsel, in violation of the Sixth Amendment. Id. ¶¶ 5–8, 10–12. Plaintiff specifically complains of cruel and unusual punishment, in violation of the Eighth Amendment. Id. ¶ 12.

The court also discerns from the complaint that plaintiff is asserting claims under the due process and equal protection clauses of the Fifth and Fourteenth Amendments. See id. ¶ 10 (alleging "loss of life, liberty, and property without rights or due process of law"). The court cannot discern from the complaint, however, the basis for plaintiff's allegations that he suffered violations of the First, Second, and Fourth Amendments.

Plaintiff's grievances extend beyond his tortious and constitutional claims to include charges of torture in violation of the Geneva Conventions, as well as racial discrimination in violation of the Civil Rights Act of 1964. Id. ¶ 12. Plaintiff alleges that he was a "victim of [j]udicial hate crime" because of his "race, name and national origin," id. ¶ 10, and appears to assert Section 1983 claims against the state judge and state prosecutors "who were acting under [c]olor of [s]tate law," id. at 1 (introduction).

For "these form[s] [of] cruelty, tortures and [j]udicial [h]ate [c]rime," and "for the loss of life and liberty and 17 years of injust [sic] conviction," plaintiff demands compensation in the amount of $85 million. Id. ¶ 13. Together with his complaint, plaintiff filed an application to proceed in forma pauperis, Applic. to Proceed In Forma Pauperis, June 12, 2014, Dkt. No. 3, and requested the appointment of counsel, Pl.'s Mot. to Appoint Counsel, July 25, 2014, Dkt. No. 6.

Defendant filed a motion to dismiss plaintiff's claim for lack of jurisdiction on August 12, 2014. Def.'s Mot. Thereafter, plaintiff filed his opposition to defendant's motion on September 2, 2014, Pl.'s Resp., Dkt. No. 9, and defendant filed its reply on September 15, 2014, Def.'s Reply, Dkt. 10. The matter is now ripe for review.

II. Plaintiff's Application to Proceed In Forma Pauperis and Motion to Appoint Counsel

As a preliminary matter, plaintiff's request to proceed in forma pauperis is **GRANTED** for the limited purpose of addressing whether this court has jurisdiction over this case. The Clerk will file the complaint with no filing fee.

3

The court next addresses plaintiff's motion to appoint counsel.[3] Plaintiff represents that he is unable to litigate this claim himself because of a permanent disability. Pl.'s Mot. to Appoint Counsel at 1. Plaintiff adds that in spite of diligent efforts, he has not found counsel to represent him. Id. at 1–2.

The constitutional right to appointed counsel is limited, in general, to criminal cases. Taylor v. Merit Sys. Prot. Bd., 527 F. App'x 970, 972 (Fed. Cir. 2013). In a civil case such as this, the right to counsel attaches "only when an indigent party's liberty is potentially threatened." Id. (citing Pitts v. Shinseki, 700 F.3d 1279, 1283 (Fed. Cir. 2012)). The Federal Circuit has instructed that "the right to counsel [in civil proceedings] is highly circumscribed, and has been authorized in exceedingly restricted circumstances." Lariscey v. United States, 861 F.2d 1267, 1270 (Fed. Cir. 1988).

Plaintiff brings the instant suit for money damages with respect to events that occurred in relation to his criminal proceedings over fifteen years ago. The court detects no potential threat to plaintiff's liberty in connection with this action here. Because there is no authority for the appointment of counsel under these circumstances, plaintiff's motion requesting the appointment of counsel is **DENIED**.

III. Defendant's Motion to Dismiss

A. Legal Standards

The jurisdiction of the United States Court of Federal Claims is a threshold matter. See PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998)). A filed claim must be dismissed if the court does not have jurisdiction to hear it. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

It is well settled that the jurisdiction of this court extends only to claims against the United States. 28 U.S.C. § 1491(a)(1) (2012) (providing that the Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States"). Because the "only proper defendant for any matter before this court is the United States, not its officers, nor any other individual," Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) (emphasis in original) (citing United States v. Sherwood, 312 U.S. 584, 588

---

[3] In addition to his response, Pl.'s Resp., Dkt. No. 9, plaintiff made a separate filing also on September 2, 2014, entitled Reply Affirmation to Motion to Dismiss, Dkt. No. 8. Notwithstanding its title, the filing concerns plaintiff's request for the appointment of counsel, rather than a position taken regarding defendant's motion to dismiss. Id. ¶¶ 3–5. Plaintiff specifically requests that the court determine his eligibility for the appointment of counsel prior to deciding defendant's motion to dismiss. Id. ¶ 4.

(1941)), this court does not have jurisdiction to entertain claims against states, localities, state and local government officials, state courts, state prisons, or state employees, Trevino v. United States, 557 F. App'x 995, 998 (Fed. Cir. 2014).

The ability of this court to entertain suits against the United States is both established and limited by the Tucker Act. See 28 U.S.C. § 1491. While the Tucker Act provides jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," 28 U.S.C. § 1491(a)(1), the Act itself does not create a substantive right to monetary relief from this court, United States v. Testan, 424 U.S. 392, 398 (1976). Rather, "[a] substantive right must be found in some other source of law." United States v. Mitchell, 463 U.S. 206, 216 (1983). Thus, to invoke the court's jurisdiction over a claim, a plaintiff must "identify a substantive right for money damages against the United States separate from the Tucker Act itself," Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004), such as "some money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States," Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). See also Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1307 (Fed. Cir. 2008) (noting that under the Tucker Act, a "money-mandating" claim "exists if the statute, regulation, or constitutional provision that is the basis for the complaint 'can fairly be interpreted as mandating compensation by the Federal Government'" (quoting Mitchell, 463 U.S. at 216–17)); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("Courts have consistently held that the jurisdiction of the Court of Federal Claims is limited to cases in which the Constitution or a federal statute requires the payment of money damages as compensation for their violation.").

This court's jurisdiction is further limited by a six-year statute of limitations. 28 U.S.C. § 2501 (2012). "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Id. The court's statute of limitations is jurisdictional and cannot be equitably tolled. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134 (2008).

When considering a motion to dismiss for lack of jurisdiction, the court must take "the allegations stated in the complaint . . . as true and jurisdiction is decided on the face of the pleadings." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (quoting Shearin v. United States, 992 F.2d 1195, 1195–96 (Fed. Cir. 1993)). Plaintiff bears the burden of establishing jurisdiction by preponderant evidence. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002) (citing Thomson v. Gaskill, 315 U.S. 442, 446 (1942)). While complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520

(1972), pro se plaintiffs nonetheless must meet the jurisdictional requirements, <u>Bernard v. United States</u>, 59 Fed. Cl. 497, 499 (2004), <u>aff'd</u>, 98 F. App'x 860 (2004).

    B.    Evaluating the Court's Jurisdiction Over Plaintiff's Claims

The court now considers whether it has jurisdiction to entertain plaintiff's claims. In its motion to dismiss plaintiff's complaint, defendant asserts that plaintiff "offers no allegations upon which this [c]ourt could base jurisdiction. The complaint does not allege any wrongdoing by the United States." Def.'s Mot. at 2–3. Defendant contends that "[b]ecause all of Mr. Gssime's claims arise out of actions by private individuals and state employees for which the United States is not responsible, this [c]ourt lacks jurisdiction to entertain them." Id. at 5. Defendant adds that this court does not have jurisdiction over plaintiff's constitutional, international law, or Civil Rights Act claims. Id. at 3–4. Finally, defendant argues that "to the extent that Mr. Gssime could articulate a cause of action over which this [c]ourt might exercise jurisdiction, such claims would be barred by the statute of limitations." Id. at 5.

Citing various legal authorities,[4] plaintiff responds that this court can hear the claims he has asserted because the court "possess[es] jurisdiction to enter judgment against state[] and federal courts."[5] Pl.'s Resp. at 9. Plaintiff asserts that the court can consider "State and Federal officials['] deliberate violations of their own [s]tatutes that affect[] citizens['] rights." Id. at 3. Moreover, plaintiff argues that the statute of limitations does not apply to his claims because the alleged "[i]nfliction of cruelty . . .

---

[4]    In support of his position, plaintiff cites to 28 U.S.C. § 1492, Article I of the United States Constitution, and an excerpt entitled "Civil Rights and Legal Protection 9.2." Pl.'s Resp. at 8. None of these sources furnish a basis for jurisdiction in this court. The cited statutory authority pertains to the court's jurisdiction over congressional reference cases, and Article I of the Constitution is the authority under which Congress established the Court of Federal Claims. See 28 U.S.C. § 171(a) (2012) ("The [United States Court of Federal Claims] is declared to be a court established under article I of the Constitution of the United States.").

[5]    In particular, plaintiff asserts that this court "is a . . . [h]igher [c]ourt of the United States that hears complaints [c]oncerning . . . my civil rights matter[,] . . . [c]laims of [j]udicial hate crime, violations of the 1st, 2nd, 4th, 5th, 6th, 8th[,] and 14th Amendment[s] of the United States Constitution." Pl.'s Resp. at 9.

resulted in permanent injuries [that] [c]ontinue to cause [the] same physical, mental and psychological . . . pain and suffering."[6] Id. at 10.

In its reply, defendant asserts that plaintiff's response to the motion to dismiss shows "that his claims arise out of alleged violations of his constitutional rights in connection with his trial in New York state court and subsequent incarceration." Def.'s Reply at 1. Defendant maintains that plaintiff has failed to meet his burden of establishing jurisdiction in this court. Id.

                1.      Plaintiff's Claims Against Defendants Other than the United States

Plaintiff's complaint makes clear that his claims arise out of the alleged actions of state and local officials and employees involved in plaintiff's criminal proceedings in New York state court. This court may only hear claims properly brought against the United States. 28 U.S.C. § 1491(a)(1). Accordingly, this court has no jurisdiction to hear the claims against the state judge, state prosecutors, court-appointed counsel, local police officers, and state doctors identified in plaintiff's complaint. Trevino, 557 F. App'x at 998 (finding that this court lacks jurisdiction over claims against state and local government officials, state courts, state prisons, or state employees). Further, the state judge and state prosecutors involved in his criminal proceedings were not, as plaintiff contends, "hired by the United States Department of Justice," see Compl. ¶ 1, such that they would qualify as federal actors. See Sneed v. United States, No. 14-194C, 2014 WL 2772898, at *3 (Fed. Cl. June 13, 2014) (rejecting plaintiff's contention that the state judges and prosecutors involved in his criminal prosecution were "agents" of the United States).

And, contrary to plaintiff's contention that this court has the power to enter judgment against state courts, see Pl.'s Resp. at 9, it does not. The court lacks "jurisdiction to review the decisions of [the] state court [j]udge . . . who presided over plaintiff's criminal case or related allegations of ineffective counsel during the prosecution of plaintiff's criminal case." Hernandez v. United States, 96 Fed. Cl. 195, 203 (2010).

---

[6] Plaintiff also attached, as exhibits to his response, various medical records. See Dkt. No. 9-1. It appears that plaintiff filed these medical documents to support his claim of permanent and continuing injuries. See Pl.'s Resp. at 10. These medical records, however, are not necessary to the court's consideration of defendant's motion to dismiss for lack of jurisdiction at issue here. Due to the confidential and personal nature of these records, the Clerk's Office—at the court's request—has sealed them to prevent public access.

2.  Plaintiff's Claims Alleging Tortious or Criminal Conduct

Even if plaintiff were to allege that the federal government was responsible for the conduct described in his complaint, the court would still lack jurisdiction to entertain such claims. Plaintiff complains of various personal injuries allegedly suffered during his interactions with local police and state doctors. Compl. ¶¶ 3–4, 7, 9–11. Plaintiff also asserts that the state judge and state prosecutors "intentionally committed [c]riminal acts," id. at 1 (introduction), particularly "[c]onspiracy, tortures, atrocity and judicial hate crime," id. ¶ 7. These claims sound in tort.

The Tucker Act prevents the court from hearing tort claims. 28 U.S.C. § 1491(a)(1) (explicitly excluding tort claims from this court's jurisdiction); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); New Am. Shipbuilders, Inc. v. United States, 871 F.2d 1077, 1079 (Fed. Cir. 1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act. . . ."). Thus, plaintiff's claims of personal injury and torture fall outside of this court's jurisdiction, as do the conspiracy claims, which similarly sound in tort. Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998).

Plaintiff's assertion that the state judge and state prosecutors committed a "judicial hate crime" is also suggestive of some type of tortious and criminal conduct. Such claims do not fall within the court's jurisdictional ambit. See Joshua v. United States, 17 F.3d 378, 379–80 (Fed. Cir. 1994). See also Flowers v. United States, 80 Fed. Cl. 201, 213, aff'd, 321 F. App'x 928 (Fed. Cir. 2008) ("The court lacks jurisdiction 'over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties . . . . Even where the claim is framed under non-tort law, the court lacks jurisdiction if the essence of the claim lies in tort.'" (quoting Cottrell, 42 Fed. Cl. at 149)).

Likewise, this court lacks jurisdiction over the claims asserted under the Civil Rights Act of 1964, as those claims may be heard only in federal district courts. Jefferson v. United States, 104 Fed. Cl. 81, 89 (2012) ("[T]he court does not have subject matter jurisdiction over actions arising under sections of the Civil Rights Acts, including 42 U.S.C. § 1983 . . . ."); Blassingame v. United States, 33 Fed. Cl. 504, 505 (1995) ("Section 1983 is not a jurisdiction-granting statute. District courts are given jurisdiction to hear claims for damages for violation of that provision . . . .").

In addition, the court has no power to address plaintiff's claim of torture, in violation of the Geneva Conventions. Under 28 U.S.C. § 1502 (2012), this court "shall not have jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations." The Geneva Conventions are comprised of international treaties and protocols to which the United States has agreed to adhere. Accordingly, claims such as plaintiff's that are based on these Conventions

8

cannot be considered by the court. See Hardin v. United States, No. 14-557C, 2014 WL 4724472, at *4 (Fed. Cl. Sept. 23, 2014) (noting that the Geneva Conventions consist of the types of treaties entered into with foreign nations over which the court does not have jurisdiction).

### 3. Plaintiff's Constitutional Claims

Plaintiff alleges that criminal and tortious conduct occurred in connection with his criminal conviction that effected various constitutional violations. See Compl. ¶ 11 (specifically asserting violations of the First, Second, Fourth, Fifth, Sixth, Eighth and the Fourteenth Amendments).

But the authority that is binding on this court makes clear that money damages are not available for violations—as plaintiff claims—of the First, Fourth, Sixth, Eighth, or Fourteenth Amendments. Thus, this court does not have jurisdiction over such claims. See, e.g., Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) (ruling that the Eighth Amendment is not a money-mandating provision); LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (explaining that the due process and equal protection clauses of the Fifth and Fourteenth Amendments are not a sufficient basis for jurisdiction because they do not mandate payment of money by the government); United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983) (stating that the First Amendment does not obligate the federal government to pay money damages); Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) (providing that the Fourth and Sixth Amendments do not obligate money damages). Moreover, as to plaintiff's claim of a violation of the Second Amendment, the court is aware of no authority finding that amendment to be money-mandating; nor is the court able to discern any such violation here based on the facts alleged in plaintiff's complaint.[7]

---

[7] The court is unable to discern any violation of plaintiff's right to bear arms based on the facts alleged in plaintiff's complaint. See U.S. Const. amend. II (providing that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed"). But even if the court could identify such a violation here, the court is bound by the Federal Circuit's implicit guidance in the Robinson case, recognizing that the Second Amendment is not a money-mandating provision. See Robinson v. United States, 230 F.3d 1382, 1382 (Fed. Cir. 2000) (unpublished table decision) ("[E]xcept for the taking clause of the fifth amendment, the other amendments do not require the United States to pay money for their alleged violation." (quoting Elkins v. United States, 229 Ct. Cl. 607, 608 (1981))). Thus, the court has no jurisdiction to hear such claims.

The court does have jurisdiction over takings claims founded in the Fifth Amendment, see, e.g., Mildenberger v. United States, 643 F.3d 938, 944–45 (Fed. Cir. 2011) (explaining that the Fifth Amendment ensures that the government does not appropriate private property for public use without just compensation), but plaintiff has not alleged any facts that could be construed as supporting such a claim.

Because the constitutional violations that plaintiff has alleged are rooted in amendments to the Constitution that do not contain money-mandating provisions, the court has no jurisdiction to hear such claims.

    4.    Plaintiff's Unjust Imprisonment Claim

Plaintiff alleges that he was wrongfully imprisoned for a crime he did not commit. Compl. ¶ 10. The court's jurisdiction over claims of unjust conviction and any resulting imprisonment, however, is quite circumscribed. Zakiya v. United States, 79 Fed. Cl. 231, 234 (2007) ("The grant of jurisdiction to the Court of Federal Claims over a claim for compensation for an unjust conviction and imprisonment is strictly construed." (citing Vincin v. United States, 199 Ct. Cl. 762, 766 (1972))), aff'd, 277 F. App'x 985 (Fed. Cir. 2008). The court's jurisdiction is limited to claims for unjust conviction "of an offense against the United States." See 28 U.S.C. § 1495 (2012) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."). Here, plaintiff was tried and convicted in New York state court, but not for an offense against the federal government. See Robinson v. United States, 230 F.3d 1382, 1382 (Fed. Cir. 2000) (unpublished table decision) (affirming dismissal of plaintiff's unjust conviction claim related to his underlying state court conviction because "a claim under § 1495 is cognizable only if the claimant was unjustly convicted of a crime against the United States").

For the reasons detailed above, the court finds that none of plaintiff's claims fall within this court's jurisdictional reach. Thus, plaintiff's complaint must be dismissed for lack of jurisdiction.

Even if plaintiff were to have articulated claims over which this court could exercise jurisdiction, such claims are barred by this court's six-year statute of limitations. See 28 U.S.C. § 2501; John R. Sand & Gravel Co., 552 U.S. at 133–34 (holding that this court's six-year statute of limitations is jurisdictional). Plaintiff's allegations stem from events that occurred more than fifteen years ago. See Compl. ¶¶ 2–10. Any cause of action plaintiff might have had would have accrued more than six years ago and cannot be maintained now.

10

C. Considering Whether a Transfer is in the Interest of Justice

The court now considers whether "it is in the interest of justice" to transfer plaintiff's complaint to another court pursuant to 28 U.S.C. § 1631. See 28 U.S.C. § 1631 (2012) ("[T]he court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed."); 28 U.S.C. § 610 (2012) (defining "courts" to include, among other things, "courts of appeals and district courts of the United States"); see also Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374–75 (Fed. Cir. 2005) (stating that the Court of Federal Claims should consider whether transfer is appropriate once the court has determined that it lacks jurisdiction).

"The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000 (Fed. Cir. 1987); id. (stating that "[f]rivolous claims include 'spurious and specious arguments'" (quoting Devices for Med., Inc. v. Boehl, 822 F.2d 1062, 1068 (Fed. Cir. 1987))). "A decision to transfer rests within the sound discretion of the transferor court, and the court may decline to transfer the case '[i]f such transfer would nevertheless be futile given the weakness of plaintiff's case on the merits.'" Spencer v. United States, 98 Fed. Cl. 349, 359 (2011) (quoting Faulkner v. United States, 43 Fed. Cl. 54, 56 (1999)).

Although plaintiff has made no mention of previously making any of his claims in federal district court, the court's independent review of dockets in the United States District Court for the Eastern District of New York reveals that plaintiff has filed a number of unsuccessful complaints, several of which contain duplicative claims he now brings in this court. One complaint in particular, filed against the state judge, state prosecutors, county courthouse, and defense attorneys involved in plaintiff's criminal proceedings, involves substantially similar claims to the ones contained in the complaint filed by plaintiff here—including allegations of "unfair justice, wrong[ful] imprisonment, tortures and racial discrimination." Compl. at 15, Gssime v. Kawanta, No. 12-CV-2533(JS)(ETB) (E.D.N.Y. May 14, 2012), Dkt. No. 1. The complaint similarly alleges that plaintiff was denied effective assistance of defense counsel during his criminal prosecution, was tortured by unnamed Nassau County Jail officers at the request of the state prosecutor, was forced to undergo mental examinations by doctors appointed by the state judge, and was imprisoned wrongfully for a crime he did not commit. See id. at 4–7, 11. The complaint likewise asserts racial discrimination, in violation of Section 1983 of the Civil Rights Act, as well as "[u]njust conviction, injustice, [and] abuse of power" by defendants, in violation of plaintiff's constitutional rights. Id. at 4. This complaint was dismissed with prejudice by the district court. See Kawanta, No. 12-CV-2533(JS)(ETB), 2012 WL 3241431, at *1 (E.D.N.Y. Aug. 2, 2012) ("The court . . . sua sponte dismisses the Complaint for failure to state a claim upon which relief may be

11

granted and because it seeks monetary relief from Defendants who are immune from such relief.").

Other filings made by plaintiff in the same district court contain allegations specifically pertaining to the earlier criminal proceeding, including criticisms about the performance of his defense counsel and claims that the officers at the Nassau County Jail tortured and beat him. These filings also have been dismissed. See Gssime v. Bray, No. 2:06-CV-4988(JS)(ETB) (E.D.N.Y. Apr. 3, 2007), Dkt. No. 14 (dismissing plaintiff's amended complaint in its entirety with prejudice, including plaintiff's claims against defense counsel for ineffective assistance of counsel and claims against unnamed Nassau County Jail Corrections officers for physical misconduct); Gssime v. Greiner, No. 02-CV-04602(JBW), 03-MISC-0066(JBW), 2003 WL 23185772 (E.D.N.Y. Oct. 29, 2003) (denying plaintiff's petition for writ of habeas corpus upon finding that he was not denied effective assistance of counsel); see also People v. Gssime, 703 N.Y.S.2d 750 (App. Div. 2000) (affirming plaintiff's judgment of conviction of arson in the second degree and criminal contempt in the first degree), leave denied, 745 N.E.2d 401 (N.Y. 2000); People v. Gssime, 745 N.Y.S.2d 727 (App. Div. 2002) (denying plaintiff's petition for a writ of error coram nobis for failure to establish he was denied effective assistance of appellate counsel).

Plaintiff's pattern of filing in district court claims that have been deemed frivolous has led to the revocation of his right to proceed in forma pauperis in both the Eastern and Western Districts of New York. See Gssime v. Wasserman, No. 2:09-CV-5674(JS)(ETB), 2010 WL 3119416 (E.D.N.Y. Aug. 3, 2010) (order revoking plaintiff's in forma pauperis status based on numerous complaints filed by plaintiff that were dismissed for failure to state a claim upon which relief may be granted); Gssime v. Burge, No. 08-CV-6404(CJS)(MWP), 2013 WL 443852 (W.D.N.Y. Feb. 5, 2013) (order revoking plaintiff's in forma pauperis status as a sanction for misrepresenting his prior litigation history to the court). Indeed, plaintiff's litigation history is well-documented in many of cases filed in district court. See Order at 1, Kawanta, No. 12-CV-2533(JS)(ETB) (E.D.N.Y. June 21, 2012), Dkt. No. 7 (noting that plaintiff had filed nine in forma pauperis complaints, five of which had been dismissed for failure to state a claim upon which relief may be granted); id. at 2 (describing plaintiff's numerous filings as a "pattern of vexatious litigation"); Wasserman, 2010 WL 3119416, at *1 (observing that plaintiff "is no stranger to this Court"); Order at 3, Gssime v. Sandoval, No. 09-CV-4465(RRM)(RER) (E.D.N.Y. Oct. 28, 2009), Dkt. No. 5 (dismissing plaintiff's complaint for alleging "the same facts and transactions underlying the claims dismissed in the three prior lawsuits").

The untimeliness of the complaints filed by plaintiff, stemming from his earlier criminal proceedings which occurred more than fifteen years ago, has also been noted. See Kawanta, 2012 WL 3241431, at *5 n.4 (noting that any potential conspiracy claims against plaintiff's legal defense would be barred by the applicable statute of limitations);

12

Bray, No. 2:06-CV-4988(JS)(ETB) (E.D.N.Y. Apr. 3, 2007), Dkt. No. 14 (dismissing plaintiff's claims against unnamed Nassau County Jail Corrections officers as untimely).

The prior rulings by the district court—on similarly founded claims as plaintiff has asserted here—as well as plaintiff's related vexatious litigation history and the untimeliness of his claims, counsel resoundingly against the transfer of plaintiff's case. Given the apparent futility of transfer to another federal court, the court declines to transfer this action.

IV. Conclusion

For the foregoing reasons, the court finds that it lacks jurisdiction over plaintiff's claims. Defendant's motion to dismiss is **GRANTED** and plaintiff's complaint is **DISMISSED** in its entirety. Plaintiff's motion to proceed in forma pauperis is **GRANTED**, and his motion for the appointment of counsel is **DENIED**. The Clerk of Court will enter judgment for defendant. No costs.

IT IS SO ORDERED.

*[signature]*
PATRICIA E. CAMPBELL-SMITH
Chief Judge